IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BOBBY WORTHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:13-cv-367 |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| AUTHORHOUSE, INC., an Indiana ) | |
| Corporation, and AUTHORHOUSE, LLC, an ) | |
| Indiana limited liability corporation, both d/b/a ) | |
| AUTHORHOUSE, ) | |
| | |
| Defendant. | |

## COMPLAINT

Plaintiff, Bobby Worthington (hereinafter "Mr. Worthington" or "Plaintiff"), brings this action against defendants AuthorHouse, Inc. and AuthorHouse, LLC (both hereinafter referred to as "AuthorHouse"), alleging copyright infringement, breach of contract, unfair competition, and unjust enrichment. Mr. Worthington seeks injunctive relief, damages, lost profits, enhanced damages, punitive damages, attorney's fees and costs. In support of his claims, Mr. Worthington states as follows:

## SUMMARY

Mr. Worthington contracted for AuthorHouse to prepare page set-ups, in his case inserting high-resolution pictures into text, for a book authored by Mr. Worthington. Subsequently, Mr. Worthington cancelled his contract with AuthorHouse, had his page set-ups prepared by another company, and then published his own book. AuthorHouse, however, wrongfully and without authority published Mr. Worthington's book in an unfinished and incomplete form, and sold that book via various methods including through Amazon.com and Google Books. Even after acknowledging its error, AuthorHouse continued to offer that book

for sale in various formats. Even after sending a cease and desist letter to AuthorHouse, Mr. Worthington's book has continued to be displayed via websites such as Google Books and Amazon.com, including with wrongful references to it being out of print. Mr. Worthington continues to print and publish his legitimate work.

## PARTIES

1. Mr. Worthington is an individual who resides at 3230 Big Spring Gap Road, Pikeville, Tennessee 37367.

2. Upon information and belief, AuthorHouse, Inc. and AuthorHouse, LLC are Delaware entities registered to do business in Indiana and both with their principal place of business at 1663 Liberty Drive, Suite 200, Bloomington, Indiana 47403. Both are located at the same address, have the same registered agent, and the same Indiana control number. Both have conducted business as AuthorHouse. AuthorHouse solicits authors throughout the United States for its "self-publishing" services, solicits and provides its services through the internet and an interactive website, and sells books throughout the United States, including within the State of Tennessee. AuthorHouse, LLC is believed to be the successor to AuthorHouse, Inc.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over this matter pursuant to the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has pendant jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a). AuthorHouse is subject to personal jurisdiction in this district, does business within and

can be found within this district, caused harm to Mr. Worthington within this district, and this is the district in which the events giving rise to the claims in this Complaint occurred.

## MR. WORTHINGTON AND HIS STOLEN BOOK

6. All prior allegations of this Complaint are incorporated herein.

7. Mr. Worthington is a lifelong deer hunter and author of many publications relating to deer hunting. He has developed a respected reputation with regard to deer hunting, has his own website, and is a recognized authority with regard to deer hunting.

8. On or about October 2011, Mr. Worthington sought assistance with the preparation of pages for a new book, which ultimately was entitled *Passionate Quest for Phantoms of the Forest* (hereinafter *"Quest"*). Needing only technical assistance, Mr. Worthington contacted AuthorHouse with regard to building high-resolution files combining Mr. Worthington's high-resolution photographs with his text. Mr. Worthington agreed to allow AuthorHouse to provide its pricing for the printing of the book to see if AuthorHouse's prices were competitive with other printers.

9. Mr. Worthington never intended to utilize any company to publish his book. He repeatedly told AuthorHouse staff with whom he worked that he was self publishing and had his own marketing plan which was to sell *Quest* on his website, www.bobbyworthington.com. In response to AuthorHouse's quoted prices, Mr. Worthington again told AuthorHouse that he did not intend to utilize it for the publishing of his book, and never authorized AuthorHouse to print, publish or sell *Quest*.

10. Mr. Worthington was unhappy with AuthorHouse's work on the high-resolution files, and so advised AuthorHouse on or about January of 2012.

3

11. AuthorHouse then told Mr. Worthington that he could cancel the contract for the preparation of the high-resolution files, and buy those files from AuthorHouse.

12. On or about February 27, 2012, while *Quest* was still being edited and had many clerical and layout mistakes, Mr. Worthington learned for the first time that a book bearing his name and containing his work was for sale in paperback in interstate commerce through Amazon.com. *See* par. 28.

13. Mr. Worthington immediately contacted his book consultant at AuthorHouse, Mr. Val Seno, who told Mr. Worthington that the book was still being edited, was unfinished and was not being published. Subsequently, Mr. Seno advised Mr. Worthington that the book was being published and distributed, that the publication and sale was in error, and would be promptly stopped. Nevertheless, the publication and sale of the book continued.

14. Mr. Worthington made repeated attempts to fully cancel his contract for the preparation of the high-resolution files, so he could purchase his files and have *Quest* printed by another printer.

15. Mr. Worthington was repeatedly told to send a cancellation form to AuthorHouse, and he did so on at least three occasions, by email and once through the postal service beginning in April of 2012. Mr. Worthington never received confirmation that AuthorHouse had received a cancellation form until September 12, 2012 when he received confirmation through email.

16. Mr. Worthington was repeatedly told that, 30 days after the cancellation form was received, he would receive a confirmation letter, and that after receiving the confirmation letter, he could pay $500.00 for the purchase of his high-resolution files. Mr. Worthington was never allowed to purchase his files.

17. In May of 2013, Mr. Worthington received an envelope from AuthorHouse containing a cover letter, the original cancellation form of April 2012, and two flash drives, all of which Mr. Worthington had mailed to AuthorHouse on or about April 13, 2012. The cancellation form was stamped as received on April 16, 2012. The two flash drives were to have Mr. Worthington's files placed on them; however, upon examination, the flash drives contained no files.

18. After acting to cancel the AuthorHouse contract in early 2012, Mr. Worthington went to another editor to prepare the pages for his book, and then had *Quest* printed by another printer.

19. Beginning on or about August 9, 2012, after the printing of *Quest*, Mr. Worthington sold the book through his website, www.bobbyworthington.com, as had always been his intent.

20. On or about February 12, 2013, months after AuthorHouse acknowledged the contract cancellation, Mr. Worthington discovered that an electronic Kindle version of his book had been placed for sale in interstate commerce at Amazon.com. That listing even encouraged "sharing with a friend." *See* par. 29.

21. Mr. Worthington later learned that AuthorHouse had authorized the Amazon.com Kindle listing and sales.

22. On or about February 26, 2013, Amazon.com was notified of its infringement of the rights of Mr. Worthington, but continued to display the *Quest* book in e-format for several weeks.

23. The Amazon.com listing for the e-version of the work apparently continued until approximately April 1, 2013.

24. On or about March 7, 2013, AuthorHouse was notified of its infringement of the copyright of Mr. Worthington.

25. Subsequently, in May of 2013, Mr. Worthington learned that his book was being offered for sale and/or sold in interstate commerce through Google Books, again with the authorization of AuthorHouse. The Google Books listing also allowed access to at least 89 "sample" pages of the unauthorized work for anyone with internet access to read free of charge. *See* par. 30.

26. The Google Books listing apparently was modified after notice from Mr. Worthington's counsel on or about May 6, 2013.

27. Attached hereto as Exhibit A is a true and correct copy of the United States Copyright Office Registration No. TX 7-677-835, for the *Quest* book, with representative pages attached.

28. Attached hereto as Exhibit B is an Amazon web page showing the wrongful sale of Mr. Worthington's book in paperback.

29. Attached hereto as Exhibit C is an Amazon web page showing the wrongful sale of Mr. Worthington's book via Kindle.

30. Attached hereto as Exhibit D are pages from Google Books showing the wrongful sale of Mr. Worthington's book via Google Books.

31. Mr. Worthington did not authorize the copying, publication, sale or distribution of his work by AuthorHouse. Further, the work published by AuthorHouse was not completed, contained errors and omissions, and was not ready for publication.

32. At all times, Mr. Worthington has been the sole and exclusive owner of all rights of copyright to *Quest*, which included the contents of the high-resolution files which AuthorHouse was building.

33. AuthorHouse's own material and documents make the following promises regarding control of the services of AuthorHouse:

    (a) "Authors retain all rights, maintain editorial control and choose the exact selection of services that best suits their goals. Our self publishing company allows every author to control his or her own publishing destiny." (*See* Exhibit E hereto).

    (b) "Through our exclusive self publishing process, you maintain creative control of your book. From editing and proofreading to cover design and page layout; from royalties and distribution to marketing and returnability, you choose what you want for your book." (*See* Exhibit E hereto).

    (c) "You keep your rights. You own all the rights to your self-published book." (*See* Exhibit E hereto).

    (d) "From copy editing to promotional press releases, you have the flexibility to create a custom project plan for the submission, production and promotion of your self-published book." (*See* Exhibit E hereto).

    (e) "When the layout of your book is complete and you're comfortable with how everything looks, you will approve your cover and interior galley. Before your book is sent to the printer, your

7
Case 1:13-cv-00367-CLC-SKL   Document 1   Filed 11/01/13   Page 7 of 14   PageID #: 7

royalty percentage and selling price will be discussed with you."

(*See* Exhibit E hereto).

(f) "At AuthorHouse, a self publishing company, we understand the amount of work you've put into your book publishing project, and ensure that you retain all rights to the content of your book throughout the self publishing process. We place your name where it belongs, right next to the copyright symbol on the first page of your published book. As the copyright owner, you also own the foreign rights to your book." (*See* Exhibit E hereto).

34. The above statements were untrue, as AuthorHouse took Mr. Worthington's unfinished book and published it without his authorization or knowledge.

35. The unauthorized book published by AuthorHouse, contains the original skill, labor, judgment, and authorship of Mr. Worthington. AuthorHouse acknowledged Mr. Worthington's rights by placing a copyright notice in the unauthorized work in favor of Mr. Worthington.

36. Each copy of *Quest* published by Mr. Worthington has contained an appropriate reference to copyright ownership. Attached hereto as Exhibit F are copies of the cover, copyright and other pages from Mr. Worthington's *Quest* publication.

37. At all relevant times, Mr. Worthington has been and still is the sole owner of all right, title and interest in and to the copyright in *Quest*.

38. Despite repeated requests, AuthorHouse has failed to produce more than limited records requested by Mr. Worthington's counsel. The first request was on March 7, 2013. No written contract has been produced, and Mr. Worthington recalls no written contract.

39. AuthorHouse has caused irreparable injury to Mr. Worthington by copying, publishing, selling and distributing a version of the *Quest* book which is inferior, which contains many printing and format errors, and which has tarnished the true *Quest* book published by Mr. Worthington.

40. Mr. Worthington's reputation has been injured and damaged due to the publication of this inferior and unauthorized product.

41. Mr. Worthington has lost sales of his *Quest* book due to the unauthorized publication, distribution and sale of the book through AuthorHouse.

42. Due to the actions of AuthorHouse, the wrongful edition of Mr. Worthington's book is still being displayed on internet websites such as Google Books and Amazon.com. See Exhibit G hereto.

43. Exhibit G includes wrongful references to Mr. Worthington's book being out of print, which is untrue, and which has further damaged his sales of his book.

44. There is a substantial likelihood that Mr. Worthington will succeed on the merits of this action. As shown above, Mr. Worthington has suffered immediate and irreparable injury which cannot be remedied by money alone.

## COUNT ONE

## COPYRIGHT INFRINGEMENT

45. All allegations of this Complaint are incorporated herein as if fully set forth.

46. Mr. Worthington is the sole owner of the copyright on *Quest*.

47. AuthorHouse improperly copied, published, sold and distributed *Quest*, and did so willfully, and even after express objection.

48. Mr. Worthington has been damaged by AuthorHouse's improper copying, printing, sale, and distribution of *Quest*, and is entitled to relief in the form of consequential, compensatory and statutory damages in an amount to be determined at trial.

## COUNT TWO

## BREACH OF CONTRACT

49. All allegations of this Complaint are incorporated herein as if fully set forth.

50. Mr. Worthington entered into a contract with AuthorHouse, with that contract being terminated in April of 2012.

51. AuthorHouse materially breached the contract with Mr. Worthington by not honoring the termination, and then copying, publishing, selling, and distributing *Quest* without authorization.

52. Mr. Worthington has been damaged by AuthorHouse's breach of the contract, and is entitled to relief in the form of consequential, compensatory and incidental damages in an amount to be determined at trial.

## COUNT THREE

## UNJUST ENRICHMENT

53. All allegations of this Complaint are incorporated herein as if fully set forth.

54. Mr. Worthington conferred benefits on AuthorHouse by providing *Quest* to AuthorHouse, which AuthorHouse improperly copied, published, sold and distributed, and by AuthorHouse receiving revenue from selling *Quest*.

55. AuthorHouse appreciated these benefits in the form of revenues and access to *Quest*.

56. The acceptance and retention of these benefits by AuthorHouse under such circumstances is inequitable without the payment to Mr. Worthington of the fair value of such benefits.

57. Mr. Worthington has been damaged by AuthorHouse's unjust enrichment, and is entitled to relief in the form of consequential, compensatory and incidental damages in an amount to be determined at trial.

## COUNT FOUR

### UNFAIR COMPETITION

58. All allegations of this Complaint are incorporated herein as if fully set forth.

59. In commercially advertising, promoting, publishing and selling *Quest*, AuthorHouse improperly passed itself off as the authorized publisher of *Quest*, constituting a false and misleading representation of fact.

60. In doing so, AuthorHouse acted recklessly or with the intent to deceive the public as to its authority to publish and sell *Quest*. Its actions have further caused *Quest* to be promoted on the internet as being "out of print."

61. The public was confused and deceived as to who was the publisher and seller of *Quest*, as the public purchased *Quest* from AuthorHouse through Amazon and Kindle, and Google Books.

62. There was a likelihood of confusion as to who was the publisher and seller of *Quest*, as the public purchased the infringing *Quest* from AuthorHouse through Amazon and Google Books.

63. Mr. Worthington has been damaged by AuthorHouse's false and misleading action, and is entitled to relief in the form of consequential, compensatory and incidental

damages in an amount to be determined at trial, both at common law and pursuant to the Lanham Act, 15 U.S.C. § 1125 et seq.

## COUNT FIVE

## PUNITIVE DAMAGES

64. All allegations of this Complaint are incorporated herein as if fully set forth.

65. AuthorHouse acted intentionally, maliciously, recklessly and/or fraudulently in copying, publishing, selling, and distributing *Quest*, as well as in breaching its contract with Mr. Worthington and unfairly competing against him.

66. Mr. Worthington has been damaged by AuthorHouse's intentional, malicious, reckless and/or fraudulent actions, and is entitled to an award of punitive damages in an amount to be determined at trial.

## COUNT SIX

## INJUNCTIVE RELIEF

67. All allegations of this Complaint are incorporated herein as if fully set forth.

68. Pursuant to 17 U.S.C. § 502(a), the Court has authority to grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright. The additional claims herein further support injunctive relief.

69. AuthorHouse has infringed upon Mr. Worthington's rights, including but not limited to his right of copyright, as shown herein. Mr. Worthington has suffered immediate and irreparable harm for which monetary damages are insufficient.

70. Injunctive relief is the only remedy that will stop the continuing copyright infringement by AuthorHouse.

71. Mr. Worthington is entitled, upon application, to a preliminary injunction, and further a permanent injunction, against AuthorHouse for its wrongful conduct as set forth herein.

WHEREFORE, Plaintiff prays for judgment against AuthorHouse as follows:

(a) For entry of a preliminary and then permanent injunction enjoining AuthorHouse, and all those in active concert or participation with it, from any further copying, publication, sale, distribution, advertising, or other dissemination of *Quest,* or any part thereof.

(b) For actual damages or, at the election of the Plaintiff, statutory damages pursuant to 17 U.S.C. § 504, of at least $500,000.00.

(c) For Plaintiff's costs.

(d) For an award of exemplary or otherwise enhanced damages pursuant to any applicable law.

(e) That this Court order the immediate destruction or, at Plaintiff's option, the transfer of all remaining copies of *Quest* and any high-resolution files therefore, to Plaintiff.

(f) That this matter be tried by a jury on all claims so triable.

(g) That Plaintiff be awarded all of his damages not previously set forth.

(h) That Plaintiff recover his attorney fees related to this action, and for corrective action taken due to AuthorHouse's wrongful conduct, as allowed by any applicable law.

(i) That this Court grant such other and further relief to which the Plaintiff may be entitled.

Respectfully Submitted:

GRANT, KONVALINKA & HARRISON, P.C.

By: s/ Mathew D. Brownfield
    Mathew D. Brownfield (BPR #10921)
    633 Chestnut Street, Suite 900
    Chattanooga, Tennessee 37450-0900
    (423) 756-8400
    mbrownfield@gkhpc.com
    *Attorneys for Plaintiff*

## VERIFICATION

The undersigned, having been duly sworn, states that the facts set forth herein are true and correct based upon his personal knowledge, and to the best of his knowledge, information and belief.

*Bobby Worthington*
Bobby Worthington

Sworn to and subscribed before me this 21st day of Oct., 2013.

*Jennifer Norrod*
Notary Public

My Commission Expires: 10-01-14

P:\Folders I-Z\W739\001\Complaint v2 (2).doc